UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
GINA GIANNONE,                                        :

                          Plaintiff,          :          03 Civ. 9665 (WHP)

         - against -                            :          MEMORANDUM AND ORDER

DEUTSCHE BANK SECURITIES, INC.,          :

                        Defendant.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM H. PAULEY III, District Judge:

         Gina Giannone ("Plaintiff" or "Giannone") brings this employment discrimination action against her former employer, Deutsche Bank Securities, Inc. ("Defendant" or "Deutsche Bank"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the New York State Human Rights Law ("HRL"), N.Y. Exec. Law § 296, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107. Giannone claims that Deutsche Bank discriminated against her based on her gender throughout and after her employment.  She also claims that her termination was discriminatory and retaliatory.  Deutsche Bank moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, Deutsche Bank's motion is granted in part and denied in part.

## BACKGROUND

         Giannone joined Deutsche Bank's New York office in June 1999 following the merger of Deutsche Bank with her then-employer, Bankers Trust.  (Defendant's Rule 56.1 Statement, dated Nov. 30, 2004 ("Def. 56.1 Stmt.") ¶¶ 1-3; Plaintiff's Rule 56.1 Statement, dated Jan. 7, 2005 ("Pl. 56.1 Stmt.") ¶¶ 1-3.)  Plaintiff worked as a Business Manager in Deutsche

Bank's Global Markets Division.  (Def. 56.1 Stmt. ¶¶ 2, 4; Pl. 56.1 Stmt. ¶¶ 2, 4.)  There were numerous "Business Manager" positions throughout the division, with each position's function and responsibilities largely dictated by the supervisor.  (Def. 56.1 Stmt. ¶ 8; Pl. 56.1 Stmt. ¶ 8.)  Notwithstanding this variability, most Business Managers interacted with the Operations and Technology Departments and helped prepare profit-and-loss reports for their investment product groups.  (Deposition of Jeanette Gorgas, dated Sept. 26, 2004 ("Gorgas Dep.") at 135.)

I. <u>Giannone's Employment Reporting to Damian Kissane</u>

When Giannone began working for Deutsche Bank, she reported to Damian Kissane ("Kissane"), the Chief Operating Officer ("COO") of the Derivatives Group.  (Def. 56.1 Stmt. ¶¶ 2, 5; Pl. 56.1 Stmt. ¶¶ 2, 5.)  Plaintiff contends that Kissane had promised her a year-end bonus between $225,000 and $250,000 if she accepted Deutsche Bank's offer.  (Deposition of Gina Giannone, dated July 7-22, 2004 ("Giannone Dep.") at 281-84, 318-19.)  Kissane denies that any such promise was made.  (Affidavit of Damian Kissane, dated Nov. 24, 2004 ("Kissane Aff.") ¶ 5.)  According to Jeanette Gorgas ("Gorgas"), the head of Deutsche Bank's Human Resources ("H.R.") Department, the Bank's policy requires that all guaranteed bonuses be in writing.  (Gorgas Dep. at 74.)

Giannone received a $175,000 bonus in 1999, bringing her total compensation for that year to $300,000.  (Def. 56.1 Stmt. ¶¶ 15, 28; Pl. 56.1 Stmt. ¶¶ 15, 28.)  Plaintiff contends that when she inquired about the higher bonus she was promised, Kissane responded that she "made an awful lot of money for a young woman."  (Giannone Dep. at 285, 291.)  In January 2000, Giannone complained to H.R. that Kissane had refused to pay her the promised bonus because she is a woman.  (Affidavit of Lisa Walsh, dated Nov. 24, 2004 ("Walsh Aff.") Ex. E:

Email from Gina Giannone to Brad Brenner, dated Jan. 31, 2000; <u>see</u> Def. 56.1 Stmt. ¶ 16; Pl. 56.1 Stmt. ¶ 16.)  Plaintiff also complained that an outside consultant, Sam Abramson ("Abramson"), attempted to relegate her to secretarial responsibilities solely because of her gender.  (Walsh Aff. Ex. E; Def. 56.1 Stmt. ¶ 18; Pl. 56.1 Stmt. ¶ 18.)

In May 2000, Giannone again complained to H.R. about her 1999 bonus and reported that Kissane was harassing her.  (Walsh Aff. Ex. F: Email from Gina Giannone to Jeanette Gorgas, dated May 16, 2000.)  According to Plaintiff, Kissane made frequent inquiries and comments about her marital status, bodily features and other "comments of a sexual nature." (Giannone Dep. at 290-300.)  Giannone admits that Kissane's harassment ended by June 2000. (Def. 56.1 Stmt. ¶ 36; Pl. 56.1 Stmt. ¶ 36.)  Kissane denies harassing Giannone but does not deny making the comments she describes.  (Kissane Aff. ¶ 8.)  After conducting an investigation, Deutsche Bank reassigned Giannone away from Kissane's supervision.  (Def. 56.1 Stmt. ¶ 21; Pl. 56.1 Stmt. ¶ 21.)  Giannone contends that Gorgas warned her not to complain of discrimination again.  (Affidavit of Gina Giannone, dated Jan. 2005 ("Giannone Aff.") ¶ 9; Giannone Dep. at 206-07.)

II.  <u>Giannone's Employment Reporting to Thomas Paul</u>

From the second half of 2000 to mid-2002, Giannone worked on the Fixed Income Desk and reported to Thomas Paul ("Paul").  (Def. 56.1 Stmt. ¶ 6; Pl. 56.1 Stmt. ¶ 6.) As Paul's Business Manager, Giannone chaired weekly meetings and interacted with the Accounting, Operations and Technology Departments to determine the Fixed Income Desk's expenses.  (Giannone Aff. ¶ 10; Deposition of Thomas Paul, dated Aug. 19, 2004 ("Paul Dep.") at 29-31.)  She also supervised an administrative assistant.  (Giannone Aff. ¶ 10.)  Her reviews

remarked that she was "exceed[ing] expectations" and referred to her as "exceptional" and "a team player." (Giannone Aff. Ex. 1; Giannone Dep. Ex. Z.) Giannone received performance bonuses of $225,000 for 2000 and $280,000 for 2001. (Walsh Aff. Ex. D.) Including bonuses, Giannone earned $355,000 in 2000 and $415,000 in 2001. (Def. 56.1 Stmt. ¶ 15; Pl. 56.1 Stmt. ¶ 15.)

   In May 2001, Mark Ferron ("Ferron"), the COO of the Global Markets Group, promoted Peter Henrici ("Henrici"), a Business Manager, to be Regional COO of Global Markets in New York. (Def. 56.1 Stmt. ¶¶ 39, 44; Pl. 56.1 Stmt. ¶¶ 39, 44.) Plaintiff contends that Henrici was promoted over more qualified women, including herself, and that Defendant failed to post the vacancy. (Giannone Dep. at 261, 269-71.) However, Ferron had supervised Henrici in the London office and thought Henrici was "an excellent Business Manager." (Affirmation of Mark Ferron, dated Nov. 18, 2004 ("Ferron Aff.") ¶ 2; Def. 56.1 Stmt. ¶ 45; Pl. 56.1 Stmt. ¶ 44.) Ferron was not personally familiar with Giannone. (Ferron Aff. ¶ 2.)

   In the summer of 2002, Ferron and two other men promoted Steven Gatto ("Gatto") to COO of Derivatives. (Def. 56.1 Stmt. ¶ 50; Pl. 56.1 Stmt. ¶ 50.) None of these male supervisors were familiar with Giannone but they all worked with Gatto in London "and thought he was the obvious choice to fill the COO role." (Ferron Aff. ¶ 4; see Def. 56.1 Stmt. ¶ 51; Pl. 56.1 Stmt. ¶ 51.) Once again, Plaintiff did not know the position was available until after it was filled. (Giannone Dep. at 274.) She contends that she interacted with senior managers better than Gatto and that Gatto committed frequent costly errors. (Giannone Aff. ¶ 4; Giannone Dep. at 275-76.)

   In July 2002, after Deutsche Bank rehired Abramson as a consultant, Giannone again complained to H.R. that the non-payment of her 1999 bonus and Abramson's prior

treatment were discriminatory.  (Walsh Aff. Ex. L: Emails between Gina Giannone and Jeanette

Gorgas, dated July 11-12, 2002.)  Giannone stated:  "[I] think this firm should start to be forward

looking about cultivating the right thoughts in people's minds about women and the work they

do here."  (Walsh Aff. Ex. L.)


III.  <u>Giannone's Employment Reporting to Susan Estes</u>

    In September 2002, Paul transferred to London and Giannone continued to

perform occasional assignments for him.  (Giannone Dep. at 29-30, 190; Paul Dep. at 75-76.)

Gianonne began reporting to Susan Estes ("Estes"), whom Deutsche Bank hired to replace Paul

as the head of Fixed Income.  (Def. 56.1 Stmt. ¶¶ 53-54; Pl. 56.1 Stmt. ¶¶ 53-54.)

    Giannone and Estes interacted poorly from the outset, in part because Estes did

not understand Plaintiff's role as Business Manager.  (Def. 56.1 Stmt. ¶ 58; Pl. 56.1 Stmt. ¶ 58.)

Accordingly, Estes and Giannone clashed over Estes' expectations and the parameters of

Plaintiff's job responsibilities, including whether she owed any continuing duty to Paul.  (Def.

56.1 Stmt. ¶¶ 59-60, 63, 69-70, 72; Pl. 56.1 Stmt. ¶¶ 59-60, 63, 69-70, 72.)  Estes believed that

Plaintiff did not provide her with information she requested.  (Deposition of Susan Estes, dated

Sept. 7, 2004 ("Estes Dep.") at 62-63.)  Their acrimony escalated at the end of October when

Giannone took a vacation without notifying Estes directly.  (Estes Dep. at 81-83; Giannone Dep.

at 98-99; Walsh Aff. Ex. N: Email from Susan Estes to Gina Giannone, dated Nov. 3, 2002.)

    Plaintiff asserts that Estes commented on her appearance at least twenty times in

two months, often interrupting business meetings to do so.  (Giannone Dep. at 101-10.)  Estes

did not comment on the appearance of male employees.  (Giannone Aff. ¶ 16.)  Plaintiff further

asserts that Estes often asked her to perform tasks male Business Managers did not perform, such

as fetching her lunch and coffee and once scheduling a manicure appointment for her. (Giannone Dep. at 114-24, 315-16.)  Giannone contends that Estes was condescending toward her and her male counterparts.  (Giannone Dep. at 154-57.)

On November 8, 2002, Giannone sent Estes an email in which she represented that her continued work as Paul's Business Manager would occupy "5 – 10%" of her time. (Walsh Aff. Ex. O.)  Plaintiff stated, "If I am to be a right hand resource, I should be involved in meetings and discussions. . . .  I am hopeful that in the future you will treat me respectfully and not condescendingly."  (Walsh Aff. Ex. O.)  Estes responded on November 10, 2002 that Giannone did not provide materials when requested and behaved unprofessionally.  (Walsh Aff. Ex. R.)  Estes acknowledged that they suffered communication problems.  (Walsh Aff. Ex. R.)

After this email exchange, Giannone met with H.R. and complained that Estes was discriminating against her because of her gender.  (Giannone Dep. at 188-89, 220-21; Deposition of Lisa Walsh, dated July 22, 2004 ("Walsh Dep.") at 89-90.)  Giannone asked H.R. to transfer her to another Business Manager position or offer her a severance package.  (Def. 56.1 Stmt. ¶ 84; Pl. 56.1 Stmt. ¶ 84; Walsh Aff. Ex. S: Email from Gina Giannone to Lisa Walsh, dated Nov. 13, 2002.)  Plaintiff stated that she could not continue to work for Estes unless her situation improved dramatically:  "[T]he issues of tone & attitude and lack of trust are major concerns for me.  Changing the job description and micromanagement is the other concern.  I believe these will be difficult to correct and I find it uncomfortable working for Susan presently." (Walsh Aff. Ex. S.)  H.R. replied that there were no vacant Business Manager positions and that Deutsche Bank normally does not offer severance packages to employees merely because they do not get along with their supervisors.  (Walsh Dep. at 109; Gorgas Dep. at 165-67.)

On November 13, 2002, Plaintiff sent Estes an email stating that she "felt extremely uncomfortable working for [her] going forward."  (Walsh Aff. Ex. T.)  After receiving this message, Estes met with Gorgas and Lisa Walsh ("Walsh") of H.R., as well as Mitch Danzig ("Danzig"), the Chief Administrative Officer of Global Markets.  (Def. 56.1 Stmt. ¶ 87; Pl. 56.1 Stmt. ¶ 87.)  Danzig explained to Estes and Gorgas that if Giannone was terminated, her position could be filled by Danzig's Business Manager, Debbie Hrvatin ("Hrvatin").  (Affidavit of Mitch Danzig, dated Nov. 23, 2004 ("Danzig Aff.") ¶ 6.)

Giannone's performance improved the following week and Estes told Walsh that she would work through any further difficulties.  (Def. 56.1 Stmt. ¶ 90; Pl. 56.1 Stmt. ¶ 90; Estes Dep. at 142, 149-50.)  On November 21, 2002, Giannone met again with Estes and Walsh.  (Def. 56.1 Stmt. ¶ 92; Pl. 56.1 Stmt. ¶ 92.)  Both parties agree that "[t]he meeting did not go well." (Def. 56.1 Stmt. ¶ 93; Pl. 56.1 Stmt. ¶ 93.)  Giannone sent Walsh an email expressing her impression that the "meeting was disastrous, led and orchestrated by Susan, and designed to be a personal attack on [Giannone's] performance in direct retaliation against [her]."  (Walsh Aff. Ex. V.)  Giannone complained:  "Susan appreciates nothing from me and now seems to have a personal vendetta against me."  (Walsh Aff. Ex. V.)  By contrast, Estes discerned that Giannone "personalized issues that were just business and forthright."  (Estes Dep. at 131.)  According to Estes, Plaintiff "referred back to the fact that she still had all these other responsibilities, even though we had clarified that she would be working for me, and that these other responsibilities were not on her plate."  (Estes Dep. at 131.)  Because of Giannone's conduct during that meeting, Estes decided to terminate her.  (Estes Dep. at 128-33.)  Gorgas testified that the decision was made because Estes and Giannone "just could not get along."  (Gorgas Dep. at 197-98.)

Deutsche Bank fired Giannone the following day, November 22, 2002. Defendant's Termination Form listed the reason for Giannone's termination as "Restructuring" and "Staff Reduction."  (Walsh Aff. Ex. W.)  Although Danzig had developed a plan to trim costs by eliminating certain Business Manager positions, Deutsche Bank never adopted it. (Danzig Aff. ¶ 6; Walsh Dep. at 136.)  Giannone contends that Paul later told her that Estes's supervisor, Wolfgang Matis ("Matis"), had revealed to him that Plaintiff was terminated because she had complained about Kissane's sexual harassment.  (Giannone Dep. at 221-22, 254-56.) According to Plaintiff, Paul told her that Matis received this information from Gorgas. (Giannone Dep. at 221-22, 254-56.)  Matis denies having such conversations.  (Deposition of Wolfgang Matis, dated Oct. 28, 2004 ("Matis Dep.") at 24-31.)   Both Estes and Matis testified that they had no knowledge of Plaintiff's prior complaints.  (Estes Dep. at 34, 120; Matis Dep. at 30-31.)


IV.  Post-Termination Events

The day after Giannone was fired, Estes offered the Fixed Income Business Manager position to Richard Luci ("Luci") of Deutsche Bank's Operations Department.  (Def. 56.1 Stmt. ¶ 101; Pl. 56.1 Stmt. ¶ 101; Affirmation of Richard Luci, dated Sept. 24, 2004 ("Luci Aff.") ¶ 3.)  While Luci was checking with his supervisors, Danzig directed that the position be filled by two female employees, Hrvatin and Katelyn Janelli ("Janelli").  (Def. 56.1 Stmt. ¶ 103; Pl. 56.1 Stmt. ¶ 103.)

In early 2003, Pablo Calderini ("Calderini"), the head of Cross Markets Arbitrage, offered that group's Senior Business Manager position to Stephen O'Gallagher ("O'Gallagher"), an associate of Calderini's in London.  (Def. 56.1 Stmt. ¶¶ 113-14; Pl. 56.1 Stmt. ¶¶ 113-14.)

Thereafter, Paul recommended that Calderini rehire Giannone for this position and Calderini had preliminary discussions with her.  (Def. 56.1 Stmt. ¶¶ 115-16; Pl. 56.1 Stmt. ¶¶ 115-16.)  When O'Gallagher accepted the offer, Calderini ended his discussions with Giannone.  (Def. 56.1 Stmt. ¶ 117; Pl. 56.1 Stmt. ¶ 117.)

V.  Procedural History

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on June 14, 2003, charging gender based discrimination and retaliation.  (Affidavit of Barry Asen, Esq., dated Nov. 30, 2004 ("Asen Aff.") Ex. B.)  The EEOC dismissed Giannone's charge and issued a right-to-sue letter on September 16, 2003.  (Asen Aff. Ex. B.)  Plaintiff filed this action on December 5, 2003.  Giannone alleges that Deutsche Bank violated Title VII, the HRL and the NYCHRL by discriminating against her on the basis of her gender through Kissane's sexual harassment, by paying her a reduced bonus and by failing to promote, terminating and failing to rehire her.  Plaintiff also alleges that she was fired in retaliation for complaining about Kissane's discrimination and sexual harassment and Estes's discriminatory conduct.  Deutsche Bank moves for summary judgment.

DISCUSSION

I.  Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

247 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The burden of demonstrating

the absence of any genuine dispute as to a material fact rests with the moving party.  <u>Adickes v.</u>

<u>S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Grady v. Affiliated Cent., Inc.</u>, 130 F.3d 553, 559

(2d Cir. 1997).  In determining whether there is a genuine issue as to any material fact, "[t]he

evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in

[her] favor."  <u>Liberty Lobby</u>, 477 U.S. at 255.

       "A trial court must be cautious about granting summary judgment to an employer

[in a discrimination case] when . . . its intent is at issue."  <u>Gallo v. Prudential Residential Servs.,</u>

<u>Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994).  Nonetheless, "a plaintiff must provide more than

conclusory allegations of discrimination to defeat a motion for summary judgment."  <u>Schwapp v.</u>

<u>Town of Avon</u>, 118 F.3d 106, 110 (2d Cir. 1997).  "[M]ere speculation or conjecture" are also

insufficient.  <u>W. World Ins. Co. v. Stack Oil, Inc.</u>, 922 F.2d 118, 121 (2d Cir. 1990).  Rather, a

plaintiff "must come forward with evidence that would be sufficient to support a jury verdict in

[her] favor."  <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995).


II.  <u>Time-Barred Claims</u>

       To preserve a Title VII claim for federal court review, an individual complaining

of employment discrimination in New York State must file a charge with the EEOC within 300

days of the alleged discriminatory act.  <u>Pikulin v. City Univ. of New York</u>, 176 F.3d 598, 599

(2d Cir. 1999); <u>Butts v. City of New York Dep't of Hous. Pres. & Dev.</u>, 990 F.2d 1397, 1401 (2d

Cir. 1993); <u>see</u> 42 U.S.C. § 2000e-5(e)(1).  Giannone filed her EEOC charge on June 14, 2003.

(Asen Aff. Ex. B.)  It is undisputed that Plaintiff's Title VII claims based on the alleged incidents

of sexual harassment by Kissane, the reduced bonus and failure to promote to the position filled

by Henrici are time-barred.  (Plaintiff's Memorandum in Opposition to Defendant's Motion for

Summary Judgment, dated Jan. 7, 2005 ("Pl. Opp. Mem.") at 17 n.4.)  These acts arose in 2000

and 2001 – more than 300 days before Giannone filed her EEOC charge.

Giannone's HRL and NYCHRL claims are time-barred to the extent they concern

events prior to December 5, 2000, or more than three years before Plaintiff filed the Complaint.

See N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d); Murphy v. Am. Home Prods.

Corp., 58 N.Y.2d 293, 306-07 (1983).  Plaintiff concedes that Kissane's alleged harassment

ceased in June 2000 and that her bonus for 1999 was to be paid at the end of that year or early in

2000.  (Giannone Dep. at 318; Pl. 56.1 Stmt. ¶ 36.)  Accordingly, Plaintiff's HRL and NYCHRL

claims for Kissane's sexual harassment and payment of a reduced bonus are time-barred.


III.  Discrimination Claims

Giannone's timely discrimination claims allege that Deutsche Bank discriminated

against her by terminating her and then failing to rehire her for the position that O'Gallagher

subsequently accepted.  (Complaint ("Compl.") ¶¶ 30-33, 36-46.)  Giannone also claims that

Deutsche Bank discriminated against her in violation of the HRL and the NYCHRL by

promoting Henrici instead of her, and in violation of Title VII as well as the state and local

statutes by promoting Gatto instead of her.  (Compl. ¶¶ 23, 36-46.)

Title VII provides, in pertinent part:  "It shall be unlawful for an employer . . . to

discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of the individual's race, color, religion, sex, or national

origin."  42 U.S.C. § 2000e-2(a)(1).  In McDonnell Douglas Corp. v. Green, 411 U.S. 792

(1973), the Supreme Court set forth the burden-shifting framework under which Title VII

11

discrimination claims are analyzed.  See Grady v. Affiliated Cent., Inc., 130 F.3d 553, 559 (2d

Cir. 1997).  Claims of discrimination brought under the HRL and the NYCHRL are "analytically

identical" to claims brought under Title VII and are reviewed under the same burden-shifting

analysis.  Torres v. Pisano, 116 F.3d 625, 629 n.1 (2d Cir. 1997); accord Dawson v. Bumble &

Bumble, 398 F.3d 211, 217 (2d Cir. 2005); Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1

(2d Cir. 2000).

   A plaintiff has the initial burden of proving a prima facie case of discrimination.

McDonnell Douglas, 411 U.S. at 802; see St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506

(1993).  To establish a prima facie case, a plaintiff must demonstrate that: (1) she is a member of

a protected class; (2) she satisfactorily performed the duties of her position; (3) she was

subjected to an adverse employment action; and (4) the adverse action occurred in circumstances

giving rise to an inference of discrimination.  Weinstock, 224 F.3d at 42; see McDonnell

Douglas, 411 U.S. at 802.  "The burden that an employment discrimination plaintiff must meet in

order to defeat summary judgment at the prima facie stage is de minimis."  McLee v. Chrysler

Corp., 109 F.3d 130, 134 (2d Cir. 1997); accord Tex. Dep't of Cmty. Affairs v. Burdine, 450

U.S. 248, 253 (1981); Scaria v. Rubin, 117 F.3d 652, 653 (2d Cir. 1987).

   Once the plaintiff has established a prima facie case, the burden shifts to the

defendant to articulate a legitimate, non-discriminatory reason for the adverse employment

action.  McDonnell Douglas, 411 U.S. at 802-03; Holt v. KMI-Cont'l, Inc., 95 F.3d 123, 129 (2d

Cir. 1996).  Any non-discriminatory reason is sufficient.  Fisher v. Vassar Coll., 114 F.3d 1332,

1335-36 (2d Cir. 1997), abrogated on other grounds by Reeves v. Sanderson Plumbing Prods.,

Inc., 530 U.S. 133, 146 (2000).  The burden then shifts back to the plaintiff to show that the

employer's reason is mere pretext and that discrimination was the true motivating factor.  St.

Mary's, 509 U.S. at 507-08; McDonnell Douglas, 411 U.S. at 804-05.  Ultimately, the question

is whether the evidence supports a rational inference that "more likely than not discrimination

was the real reason" for the adverse action of which the plaintiff complains.  Van Zant v. KLM

Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (internal quotation omitted).

        Deutsche Bank does not contest that Giannone has established the first three

prongs of her prima facie case for each of the adverse employment actions timely alleged in the

Complaint.  Accordingly, this Court considers whether a genuine issue of material fact exists

with respect to whether the circumstances surrounding those events give rise to an inference of

discrimination, and whether the parties have met their respective burdens at the second and third

stage of the McDonnell Douglas analysis.


    A.  Discriminatory Discharge

        Plaintiff argues that the fact that Estes first attempted to hire a man, Luci, as

Giannone's replacement supports an inference that Estes decided to terminate Giannone because

she is a woman.  Moreover, Plaintiff contends, Estes's comments about Giannone's appearance,

together with her condescension and assignment of menial tasks reflect that Estes viewed

Giannone stereotypically as a woman.

        Deutsche Bank responds that "the notion of one woman discriminating against

another woman is generally at odds with common sense."  (Defendant's Reply Memorandum in

Support of Motion for Summary Judgment, dated Jan. 21, 2005 at 5.)  However, the Second

Circuit has held that "[t]he proposition that people in a protected category cannot discriminate

against their fellow class members is patently untenable."  Danzer v. Norden Sys., Inc., 151 F.3d

50, 55 (2d Cir. 1998); see Feingold v. New York, 366 F.3d 138, 155 (2d Cir. 2004) ("We also

reject the district court's suggestion that an inference of discrimination cannot be drawn because Feingold was fired by another Jew."). Although the fact that Plaintiff was terminated by Estes, a woman, makes "an inference of discrimination more difficult," Pesok v. Hebrew Union Coll.-Jewish Inst. of Religion, 235 F. Supp. 2d 281, 287 n.5 (S.D.N.Y. 2002), it does not sound the death knell on Giannone's prima facie case.

Deutsche Bank also contends that an inference of discrimination is precluded by the fact that Giannone was replaced by two women, Hrvatin and Janelli. Indeed, "[w]here no evidence giving rise to an inference of discrimination has been presented, the fact that a plaintiff is replaced with an individual within his protected class undermines his attempt to establish a prima facie case of discrimination." Spiegler v. Isr. Disc. Bank of N.Y., No. 01 Civ. 6364 (WK), 2003 WL 21488040, at *11 (S.D.N.Y. June 25, 2003). By contrast, "the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the prima facie stage of the Title VII analysis." Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001). That is, discrimination can be inferred from evidence that the decision-maker showed a "preference for a person not of the protected class." James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000).

Estes first attempted to replace Giannone with a man, Luci. (Luci Aff. ¶ 3.) Although Danzig later required Estes to select two women for the Fixed Income Business Manager position (Luci Aff. ¶ 5), the fact that Estes initially tried to replace Giannone with a man reflects a preference for a person outside Plaintiff's protect class and suffices to support an inference of discrimination.

In any event, Estes' inclination toward Luci is not the only evidence that supports an inference of gender discrimination. Cf. Spiegler, 2003 WL 21488040, at *11. Estes

repeatedly made comments about Giannone's appearance and did not make similar remarks to male employees.  (Giannone Aff. ¶ 16; Giannone Dep. at 101-10.)  A rational jury could conclude that Estes was focused unfairly on the fact that Giannone is a woman.  See Drinkwater v. Union Carbide Corp., 904 F.2d 853, 862-63 (3d Cir. 1990) ("Undue preoccupation with what female employees look like is not permissible under the anti-discrimination laws if the same kind of attention is not paid to male employees."); see also Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 119 (2d Cir. 2004) ("'[S]tereotyped remarks can be evidence that gender played a part' in an adverse employment decision." (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 251 (1989))).

Moreover, Estes utilized Giannone for "personal chores."  (Giannone Dep. at 114-24, 315-16.)  Such tasks were not within the scope of her previous Business Manager positions.  Nor were they assigned to similarly situated men.  (Giannone Dep. at 117-19.)  The assignment of menial (or, as Plaintiff asserts, stereotypically female) tasks to Plaintiff could lead a rational finder of fact to conclude that Estes fostered a discriminatory animus toward Giannone.  Cf. Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 290 (2d Cir. 1998) (although "historically, in most firms, most secretaries have been women," the assignment of tasks "typically done for an executive by his or her secretary" was not suggestive of gender discrimination where plaintiff was a secretary).  The fact that Giannone acceded to such tasks is immaterial.  The pertinent inquiry is how Estes viewed Plaintiff.  Thus, Giannone has established her prima facie case of discrimination.

The burden thus shifts to Deutsche Bank to articulate a legitimate non-discriminatory reason for terminating Plaintiff.  See McDonnell Douglas, 411 U.S. at 802-03; Fisher, 114 F.3d at 1335-36.  Defendant asserts that for reasons unrelated to Giannone's gender,

Estes and Giannone simply could not get along, leading Estes to terminate her.  Indeed,

Giannone asked H.R. to transfer her away from Estes's supervision just prior to her termination.

 (Walsh Aff. Ex. S.)  "It is widely acknowledged that reasons such as low productivity and

conflicts with persons in positions of authority constitute legitimate nondiscriminatory reasons

justifying discharge."  Thermidor v. Beth Isr. Med. Ctr., 683 F. Supp. 403, 412 (S.D.N.Y. 1988).

      While Deutsche Bank's asserted reason is non-discriminatory, the reasons listed

on Giannone's Termination Form are "Restructuring" and "Staff Reduction."  (Walsh Aff. Ex.

W.)  Deutsche Bank's inconsistent explanations creates an issue of fact as to whether the reason

it currently asserts is pretextual.  Of course, "there are so many reasons why employers give false

reasons for an adverse employment action that evidence contradicting the employer's given

reason – without more – does not necessarily give logical support to an inference of

discrimination."  James, 233 F.3d at 154; see also Reeves, 530 U.S. at 147 ("Proof that the

defendant's explanation is unworthy of credence is simply one form of circumstantial evidence

that is probative of intentional discrimination, and it may be quite persuasive.").  The inquiry is

case-specific.  Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000).

      In these circumstances, a jury could reasonably find that the Business Manager

position, though loosely defined, did not include the tasks that Estes attributed to it and that, by

assigning those tasks to Giannone, Estes demeaned and belittled her solely because of her

gender.  Moreover, Estes' frequent comments about Giannone's appearance may reflect that she

had honed in on her gender.  Therefore, Plaintiff has raised a triable issue of fact that Estes's

inability to get along with her had its genesis in the fact that Giannone is a woman.  See Kerzer

v. Kingly Mfg., 156 F.3d 396, 402 (2d Cir. 1998) (court can consider evidence used to establish

a plaintiff's prima facie case on the question of whether the employer's proffered reason is

pretext); <u>accord</u> <u>Diaz v. Weill Med. Ctr. of Cornell Univ.</u>, No. 02 Civ. 7380 (AJP), 2004 WL

285947, at *23 (S.D.N.Y. Feb. 13, 2004).

   Accordingly, Deutsche Bank is not entitled to summary judgment on Plaintiff's

claim of discriminatory discharge.


  B. <u>Failure to Promote and Failure to Rehire</u>

   Plaintiff claims that Deutsche Bank discriminated against her by promoting two

males, Henrici and Gatto, to COO positions despite her extensive experience and superior

credentials.  Moreover, Plaintiff claims that Deutsche Bank discriminated against her by

promoting O'Gallagher, a male, to be Senior Business Manager of the Cross Markets Arbitrage

Group instead of rehiring her for that position.

   For both claims, Plaintiff has established her <u>prima facie</u> case by presenting

evidence that she was qualified and that the positions were given to men.  <u>See</u> <u>De La Cruz v.</u>

<u>New York City Human Res. Admin. Dep't of Soc. Servs.</u>, 82 F.3d 16, 20 (2d Cir. 1996);

<u>Quaratino v. Tiffany & Co.</u>, 71 F.3d 58, 65 (2d Cir. 1995).  However, for all three employment

decisions, Deutsche Bank offers the legitimate, non-discriminatory reason that the decision-

makers had prior experience with the men they promoted, were comfortable working with them

and lacked first-hand experience with Giannone.  <u>See</u> <u>Scaria v. Rubin</u>, No. 94 Civ. 3333 (SAS)

(AJP), 1996 WL 389250, at *11 (S.D.N.Y.  July 11, 1996), <u>aff'd</u>, 117 F.3d 652 (2d Cir. 1997)

("'[F]avoritism' based on proven performance is surely a valid reason for promotion.").

Moreover, in the case of Plaintiff's failure-to-rehire claim, Calderini extended an offer to

O'Gallagher before Giannone's name was brought to his attention.  (Def. 56.1 Stmt. ¶ 115; Pl.

56.1 Stmt. ¶ 115.)  To defeat summary judgment, therefore, Plaintiff must come forth with evidence tending to show that Defendant's proffered reason is pretext.

Giannone contends that the individuals chosen instead of her "were significantly less qualified."  (Pl. Opp. Mem. at 19.)  Such a claim, even if true, does not show that Deutsche Bank's reason is pretextual.  In fact, it is consistent with Defendant's explanation that Henrici, Gatto and O'Gallagher were promoted because the decision-makers had trust and confidence in them.  See Williams-Velasquez v. Guardian Life Ins. Co., No. 99 Civ. 738 (LTS) (JCF), 2003 WL 2203857, at *11 (S.D.N.Y. Aug. 29, 2003) ("Plaintiff has failed to present any evidence that casts doubt on Defendants' other proffered reason for promoting Rickenbaugh, a reason independent of whether Williams' qualifications were reviewed in good faith:  that Rickenbaugh was a favored employee because of his performance history.").  As long as impermissible factors did not come into play, Deutsche Bank could determine the relative weight to ascribe to objective qualifications and the subjective evaluations of the candidates' future supervisors.  See Scaria, 117 F.3d at 654-55 ("As between experience and education, the IRS elected to value the first over the second in filling the job, and there is nothing to show that this value judgment was pretextual.") (citing Dale v. Chi. Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986) ("This Court does not sit as a super-personnel department that reexamines an entity's business decisions.")); Evans v. Port Auth. of N.Y. & N.J., 192 F. Supp. 2d 247, 274 (S.D.N.Y. 2002) (holding that the plaintiff could not show pretext by demonstrating that she was more qualified than the individual actually selected because the defendant "would be justified in regarding [that individual's experience] to be more relevant" to the position than the plaintiff's).

Giannone also contends that the promotions of these three men were discriminatory because Deutsche Bank failed to publicize these vacancies.  However, failure to

post a vacancy does not give rise to an inference of discrimination – it merely relieves the

plaintiff of her burden to show that she applied for the position.  Grant v. Morgan Guar. Trust

Co. of New York, 638 F. Supp. 1528, 1538 (S.D.N.Y. 1986) ("[T]he failure to post job notices,

even if proven, is insufficient to substantiate a claim of intentional discrimination where there

has been no showing of how the absence of posting resulted in discrimination against the

plaintiff."); see Petrosino v. Bell Atl., 385 F.3d 210, 227 (2d Cir. 2004) ("[T]to be excused from

the specific application requirement, an employee must demonstrate that (1) the vacancy at issue

was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was

filled or (b) attempted to apply for it through informal procedures endorsed by the employer.")

(citing Brown v. Coach Stores, Inc., 163 F.3d 706, 710 n.2 (2d Cir. 1998)); Mauro v. S. New

England Telecomms., Inc., 208 F.3d 384, 387 (2d Cir. 2000).

      Accordingly, Deutsche Bank is entitled to summary judgment on Giannone's

claims that Defendant failed to promote her or rehire her because she is a woman.


IV.  Retaliation Claim

      Plaintiff claims that she was terminated in retaliation for complaining about

Kissane's sexual harassment and discrimination in 2000 and about Estes's sex discrimination

two years later.  (Compl. ¶¶ 18, 28, 30, 33, 47-57.)

      Title VII provides that "it shall be an unlawful employment practice for an

employer to discriminate against any of [its] employees . . . because [such employee] has

opposed any . . . unlawful employment practice."  42 U.S.C. § 2000e-3(a).  The HRL and

NYCHRL contain similar provisions.  N.Y. Exec. Law § 296(e); N.Y.C. Admin. Code § 8-

107(7).  Unlawful retaliation claims are also governed by the McDonnell Douglas burden-

shifting analysis, although the prima facie case is different.  See Van Zant, 80 F.3d at 714.  To establish a prima facie case for retaliation, a plaintiff must show that (1) she participated in a protected activity; (2) the employer was aware of her participation in the protected activity; (3) she was subjected to an adverse employment action; and (4) there is a causal connection between the two.  Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003); Van Zant, 80 F.3d at 714.

Giannone engaged in protected activity until just prior to her termination.  In 2000 and 2002 Giannone complained to H.R. that Kissane sexually harassed her and paid her a reduced bonus because of her gender.  (Def. 56.1 Stmt. ¶¶ 16, 18; Pl. 56.1 Stmt. ¶¶ 16, 18; Walsh Aff. Exs. F, L.)   Moreover, Plaintiff specifically complained to H.R. in November 2002 that Estes was discriminating against her on that basis.  (Giannone Dep. at 188-89, 220-21.)

Estes was not privy to these conversations, and there is no direct evidence that Estes knew of Giannone's complaints of discrimination.  Thus, Deutsche Bank contends that Plaintiff has failed to satisfy the second prong of her prima facie case.  However, at this stage, a plaintiff is not required to prove that individual decision-makers had knowledge of the employee's protected activity.  Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000); Fowler v. New York Transit Auth., No. 96 Civ. 6796 (JGK), 2001 WL 83228, at *3 (S.D.N.Y. Jan. 31, 2001); Alston v. New York City Transit Auth., 14 F. Supp. 2d 308, 311 (S.D.N.Y. 1998).  It is undisputed that Giannone's complaints were within Deutsche Bank's corporate knowledge, which is sufficient for purposes of the second prong of a prima facie case.

Nonetheless, the fact that Estes was unaware of Giannone's protected activity may be relevant to the fourth prong "as some evidence of a lack of a causal connection." Gordon, 232 F.3d at 117.  In this regard, Giannone contends that Gorgas told Matis that Plaintiff was terminated because she had complained about Kissane and that Matis relayed this to Paul

who then told Plaintiff.  (Giannone Dep. at 221-22, 254-56.)  There is no evidence other than

Plaintiff's testimony to substantiate this Gorgas-to-Matis-to-Paul-to-Giannone daisy chain,

which consists of statements with hearsay infirmities.

On a motion for summary judgment, only admissible evidence may be

considered. Nora Beverages, Inc. v. Perrier Group of Am., Inc., 269 F.3d 114, 123 (2d Cir.

2001).  Giannone contends that Paul's statement to Giannone is not hearsay but a party

admission.  Indeed, a statement by an opposing party's agent is admissible against that party if

the statement "concern[s] a matter within the scope of the agency or employment, [and was]

made during the existence of the relationship."  Fed. R. Evid. 801(d)(2)(D).  Where, as here, the

subject matter of the statement is an adverse employment action, statements by co-workers fall

within Rule 801(d)(2)(D) if the co-workers were "supervisors or significant participants in the

decisions" at issue.  Taylor v. Potter, No. 99 Civ. 4941 (AJP), 2004 WL 1811423, at *18

(S.D.N.Y. Aug. 16, 2004); see Evans, 192 F. Supp. 2d at 262 (holding a statement outside the

Rule because "[t]here is no evidence that [the declarant] was plaintiff's supervisor or played a

role in any of the employment decisions").

Paul's statement to Giannone is not admissible as Deutsche Bank's admission.

Although Giannone devoted approximately "20 percent of her time" to Paul's projects even after

Estes replaced him in September 2002, he had ceded to Estes the authority to evaluate Giannone,

determine her bonus and terminate her.  (Paul Dep. at 26, 76.)  Thus, even if Giannone was

performing assignments for Paul at the time of her termination, Paul's statement to Giannone

about the reasons for her discharge relates to a matter beyond the scope of his employment.

Moreover, Paul played no role in Giannone's termination.  Accordingly, his statement to

Giannone constitutes inadmissible hearsay, and this Court may not consider it.

Plaintiff's only other evidence of causation is the fact that her termination occurred twelve days after she last complained of discrimination. Though circumstantial, the temporal proximity between Giannone's discharge and her complaints to H.R. is sufficient to meet her minimal burden of establishing causation. See Cifra v. Gen. Elec. Co., 252 F.3d 205, 217 (2d Cir. 2001). Thus, Plaintiff has satisfied her prima facie case.

The burden thus shifts to Deutsche Bank to articulate a legitimate, non-retaliatory reason for Giannone's termination. As discussed above in the context of Plaintiff's discrimination claims, Defendant has satisfied its burden by presenting evidence that Giannone was fired because she and Estes could not get along. As such, Giannone "must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." Cifra, 252 F.3d at 216; see James, 233 F.3d at 154.

Plaintiff argues that she can establish pretext because Deutsche Bank terminated her without first imposing a lesser sanction, in contravention of its established progressive discipline procedures. However, the measures Deutsche Bank employs depend on the given situation (Gorgas Dep. at 47; Walsh Dep. at 50-51), and there is no evidence that H.R.'s repeated discussions with Giannone prior to her termination are inconsistent with Defendant's progressive discipline program.[1] Plaintiff also contends that Deutsche Bank's reason differs from the reasons given on the Termination Form and by Estes in her deposition testimony. Although this disparity allows a jury to disbelieve Defendant's proffered reason, it does not, by itself, permit a finding that retaliation was the real reason for Deutsche Bank terminated Plaintiff. See James,

---

[1] Plaintiff also relies on Gorgas's 2000 admonition that Giannone not complain about discrimination. However, Gorgas played no direct role in the termination decision (Gorgas Dep. at 197), and so her alleged the statement is irrelevant.

233 F.3d at 155-56.  Moreover, Giannone has presented no evidence to suggest that the acrimony between she and Estes had anything to do with Plaintiff's complaints to H.R.  Given the particular weakness of Plaintiff's evidence of causation at the prima facie stage, this Court concludes that Giannone has failed to present sufficient evidence to permit a rational jury to believe that retaliation was the real reason for Deutsche Bank's termination decision.  See Reeves, 530 U.S. at 148-49 ("Whether judgment as a matter of law is appropriate in any particular case will depend on . . . the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case."); see also Van Zant, 80 F.3d at 714 (summary judgment proper on retaliation claim where plaintiff "put forward nothing other than conclusory allegations to suggest a causal relationship").

Because Giannone is unable to make the required showing of pretext, Deutsche Bank is entitled to summary judgment on Plaintiff's claim of retaliatory discharge.

V.  Motion for Leave to Amend the Complaint

Finally, Plaintiff seeks leave to amend the Complaint pursuant to Rule 15(b) to add a breach of contract claim relating to the 1999 year-end bonus.  The decision to grant or deny leave to amend is within the discretion of the district court.  United States v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi., 889 F.2d 1248, 1254 (2d Cir. 1989).  Where, as here, discovery is complete, "the court may deny the amendment as futile when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendant would be

entitled to judgment as a matter of law under Fed. R. Civ. P. 56(c)."  Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001); see Foman v. Davis, 371 U.S. 178, 182 (1962).

Under New York law, "[t]he terms of an at-will employee's employment may be modified at any time.  The employee's only option is to terminate the relationship; by continuing to remain as an employee, the employee will be deemed to have ratified the new relationship." Kempf v. Mitsui Plastics, Inc., No. 96 Civ. 1106 (HB), 1996 WL 673812, at *6 (S.D.N.Y. Nov. 20, 1996); accord Stamelman v. Fleishman-Hillard, Inc., No. 02 Civ. 8318 (SAS), 2003 WL 21782645, at *3 (S.D.N.Y. July 31, 2003); Bottini v. Lewis & Judge Co., 211 A.D.2d 1006, 1008, 621 N.Y.S.2d 753, 754 (3d Dep't 1995) ("[D]efendant was free to modify the terms of plaintiff's employment, subject only to plaintiff's right to leave his employment if he found the new terms unacceptable.").

Giannone acknowledges that her employment with Deutsche Bank was at will (Pl. 56.1 Stmt. ¶ 3) but contends that the promised bonus was not a "continuing term[] of at-will employment such as salary or full time status" but "a one-time payment" (Pl. Opp. Mem. at 22). However, New York courts will only enforce a promise to pay a bonus if the "bonus constitutes a term of employment and there exists a reasonable basis for calculating it."  Tsegaye v. Impol Aluminum Corp., No. 01 Civ. 5943 (LMM), 2003 WL 221743, at *8 (S.D.N.Y. Jan. 30, 2003) (citing O'Shea v. Bidcom, Inc., No. 01 Civ. 3855 (WHP),  2002 WL 1610942, at *3 (S.D.N.Y. July 22, 2002)).  If, as Plaintiff contends, Kissane guaranteed her a $225,000-$250,000 bonus, the bonus constituted a term of employment, akin to annual salary, rather than a discretionary perquisite.  See Simas v. Merrill Corp., No. 02 Civ. 4400 (RCC), 2004 WL 213013, at *6 (S.D.N.Y. Feb. 4, 2004) (holding that a signing bonus was a "term of employment" because it was to be calculated as a set percentage of that employee's sales and not dependent on the

employer's discretion); <u>cf.</u> <u>Truelove v. Northeast Capital & Advisory, Inc.</u>, 95 N.Y.2d 220, 224

(2000) (holding a bonus beyond N.Y. Labor Law § 190(1)'s definition of "wages" because

"plaintiff's share in the bonus pool was entirely discretionary and subject to the non-reviewable

determination of his employer").   Because Giannone remained in Defendant's employ after

receiving a reduced bonus for 1999, she ratified the $175,000 bonus and forfeited her ability to

pursue a breach of contract claim on that basis.   <u>Cf.</u> <u>Mirchel v. RMJ Secs. Corp.</u>, 205 A.D.2d

388, 389-91, 613 N.Y.S.2d 876, 878-79 (1st Dep't 1994) (holding that summary judgment was

improper on an at-will employee's breach of contract claim for failure to pay a bonus where the

plaintiff resigned once he learned that his employer would not pay the bonus as promised).

   Accordingly, Plaintiff's proposed breach of contract claim would be futile, and

her motion for leave to amend is denied.

CONCLUSION

For the foregoing reasons, Deutsche Bank's motion for summary judgment is granted in part and denied in part. Specifically, Deutsche Bank's motion is denied with respect to Plaintiff's Title VII, HRL and NYCHRL claims for discriminatory discharge. In all other respects, Deutsche Bank's motion for summary judgment is granted.

Plaintiff's motion for leave to amend the Complaint to add a claim for breach of contract is denied.

Dated:     September 21, 2005
           New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Copies mailed to*:

Debra L. Raskin, Esq.
Rebecca J. Osborne, Esq.
Vladeck, Waldman, Elias & Engelhard, P.C.
1501 Broadway, Suite 800
New York, NY 10036
*Attorneys for Plaintiff*

Barry Asen, Esq.
Susan Gross Sholinsky, Esq.
Epstein, Becker & Green, P.C.
250 Park Avenue
New York, NY 10177
*Attorneys for Defendant*